JOHN L. BURRIS, ESQ. (SBN 69888)
BENJAMIN NISENBAUM, ESQ. (SBN 222173)
LATEEF H. GRAY, ESQ. (SBN 250055)
MELISSA C. NOLD, ESQ. (SBN 301378)
**LAW OFFICES OF JOHN L. BURRIS**
7677 Oakport Street Suite 1120
Oakland, California 94621
Tel: (510) 839-5200
Fax: (510) 839-3882
john.burris@johnburrislaw.com
bnisenbaum@hotmail.com
lateef.gray@johnburrislaw.com
melissa.nold@johnburrislaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.C., individually and as co-successor-in-interest to Decedent Jose Ceja, by and through his Guardian-Ad-Litem Alicia Villa; I.C., individually and as co-successor-in-interest to Decedent Jose Ceja, by and through her Guardian-Ad-Litem Alicia Villa; Guadalupe Villa-Vargas, individually; Arturo Ceja-Gonzalez, individually; Pablo Ceja, individually and as Guardian-Ad-Litem for W.C. and J.C.; and Leticia Ceja, individually, <br><br> Plaintiffs, <br> v. <br><br> CITY OF FAIRFIELD, a municipal corporation; JOE GRIEGO, individually and in his official capacity as a police officer for the City of Fairfield; DANIEL HATZELL, individually and in his official capacity as a police officer for the City of Fairfield; CLINTON MORGAN, individually and in his official capacity as a police officer for the City of Fairfield; and DOES 1-25, inclusive, individually, jointly and severally, <br><br> Defendants. | Case No. 2:16-cv-00746 JAM-CKD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date: August 23, 2016 <br> Time: 1:30 p.m. <br> Place: Courtroom 6 <br><br> HONORABLE JOHN A. MENDEZ |

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

1

# TABLE OF CONTENTS

Table of Authorities ...........................................................................................................................3

Introduction ......................................................................................................................................5

Statement of Facts ...........................................................................................................................5

Argument .........................................................................................................................................7

A. Legal Standard of Motion to Dismiss .........................................................................................7

B. The FAC Adequately States that Defendants Griego and Morgan Integrally Participated in the Violations Suffered by Decedent and Plaintiffs ..............................................................................8

1. Fourth Amendment Violation ......................................................................................................8

2. Defendants Griego and Morgan are not Entitled to Qualified Immunity ...................................10

C. Plaintiffs Adequately Allege Fourteenth Amendment Violations ............................................. 11

D. Plaintiffs Adequately State a Claim for *Monell* Violations Against Defendant City ................ 12

E. State Law Causes of Action ...................................................................................................... 13

1. California Civil Code Section 52.1 ........................................................................................... 13

2. Plaintiffs' Negligence Claims .................................................................................................... 14

3. Assault and Battery ................................................................................................................... 16

Conclusion .....................................................................................................................................17

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

2

# TABLE OF AUTHORITIES

**Statutes**

Federal Rules of Civil Procedure, Rule 12(b)(6) ...........................................................................7

Federal Rules of Civil Procedure, Rule 15(a) ................................................................................8

**Cases**

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) ................................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................................7, 8

*Bass v. City of Fremont*, 2013 WL 891090 (ND Cal. 2013) .......................................................14

*Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013) ...............................................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................7, 12

*Billington v. Smith,* 292 F.3d 1177 (9th Cir. 2002) .....................................................................15

*Bird v. Saenz*, 28 Cal.4th 910 (2002) ..........................................................................................16

*Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir. 2007) .....................................................9

*Board of County Commissioners v. Brown*, 520 U.S. 397 (1997) ..............................................13

*Boyd v. Benton County,* 374 F.3d 773 (9th Cir. 2004) ............................................................9, 11

*Bravo v. City of Santa Maria,* 665 F.3d 1076 (9th Cir. 2011) ....................................................10

*Brown v. Ransweiler,* 171 Cal.App.4th 516 (2009) ..............................................................15, 16

*Cardoso v. Cnty. of San Mateo*, 2013 WL 900816 (N.D. Cal. 2013) .........................................14

*Chuman v. Wright,* 76 F.3d 292 (2004) ........................................................................................9

*Cunningham v. Gates,* 229 F.3d 1271 (9th Cir. 2000) ................................................................10

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) .......................................................12

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ..............................................................8

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir.1997) ........................................................7

*Gilmore v. Superior Court,* 230 Cal.App.3d 416 (1991) ...........................................................15

*Graham v. Connor*, 490 U.S. 386 (1989) .....................................................................................8

*Grudt v. City of Los Angeles,* 2 Cal.3d 575 (1970) ....................................................................15

*Hayes v. County of San Diego*, 57 Cal.4th 622 (2013) ..............................................................15

*Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997) ..........................................................12

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

3

*Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ..................................................................12

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003)...................................................................7

*Jackson v. Carey*, 353 F .3d 750 (9th Cir. 2003) ....................................................................7

*Jones v. Kmart Corp.*, 17 Cal.4th 329 (1998) .......................................................................14

*Long v. City and Cnty of Honolulu*, 511 F.3d 901 (9th Cir.2007) .........................................11

*Long v. Cty. of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) .................................................13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir.2000) .......................................................................8

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) ..................................................8

*Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................................12, 13

*Monteilh v. County of Los Angeles,* 820 F.Supp.2d 1081 (C.D.Cal. 2011) ..........................10

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) .........................11

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)......................................................7

*Munoz v. Olin,* 24 Cal.3d 629 (1979).....................................................................................15

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) .................................................................11

*Quiroz v. Seventh Ave. Center,* 140 Cal.App.4th 1256 (2006) ..............................................15

*Ra v. Superior Court*, 154 Cal.App.4th 142 (2007)..............................................................16

*Rodriguez v. City of Modesto*, 2013 WL 6415620 (E.D. Cal. 2013) .....................................14

*Shoyoye v. Los Angeles*, 203 Cal.App.3d 947 (2012) ......................................................13, 14

*Thing v. La Chusa*, 48 Cal.3d 644 (1989).............................................................................16

*Torres v. City of Los Angeles,* 548 F.3d 1197 (9th Cir. 2008)...............................................10

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ...............................................................11

*Wood v. Moss*, 134 S. Ct. 2056 (2014) ..................................................................................10

**California Statutes**

Civil Code § 52.1 ................................................................................................................13-14

Civil Procedure Code § 377.60...............................................................................................15

Penal Code § 148 ...................................................................................................................14

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

4

## INTRODUCTION

This action arises out of the unconstitutional shooting death of Decedent Jose Ceja, which occurred at his home in front of his entire family, and was carried out by Defendants Hatzell, Griego and Morgan. Although Defendants style their motion as a motion to dismiss the First Amended Complaint in its entirety, Defendants only expressly attack certain aspects of Plaintiffs' causes of action. Particularly, Defendants assert that because Defendants Griego and Morgan did not shoot, they are not exposed to any liability in this matter. Indeed, Defendants Griego and Morgan were integral participants in the harm suffered by Decedent and Plaintiffs and all claims are properly brought against them. Importantly, Defendants do not challenge the very essence of the litigation, i.e., that Decedent's and Plaintiffs' state law and constitutional rights were violated by the unlawful shooting of Decedent.

Plaintiffs adequately allege claims against all Defendants. As such, the Court should deny Defendants' Motion to Dismiss. Plaintiff, otherwise, seeks leave to amend the complaint to omit any inadvertent references or pleading deficiencies as the Court ascribes.

## STATEMENT OF FACTS

On January 15, 2015, at approximately 8:00 a.m., Decedent, Jose Ceja, was at his family's home located at 2007 Sosa Court in Fairfield, California. Decedent Jose Ceja's family members summoned the police, to request assistance with Decedent Jose Ceja. Sometime thereafter, Defendant Officers Griego, Hatzell and Morgan arrived at the family's home in response to the call. Outside of the home, Plaintiff Pablo Ceja provided the Defendant officers with a brief description of the situation, including the fact that his brother, Decedent Jose Ceja, was extremely intoxicated. Plaintiff Pablo Ceja requested that the defendant Officers turn on their body cameras before they entered the home. The Defendant Officers informed Plaintiff Pablo Ceja that they would turn on their body cameras.

Along with Plaintiff Pablo Ceja, the defendant Officers then entered the home. One of the Defendant Officers called for the Decedent Jose Ceja to come into the living room,[1] as the Decedent was

---

[1] Defendants argue that "Plaintiffs do not allege Griego or Morgan called [Decedent Jose Ceja] into the living room…" (Document 12 at 12:3-6.) However, this is patently false. Plaintiffs expressly indicate that one of the Defendant Officers ordered Decedent to walk to where they were located inside the home. Indeed, this is the only command that Plaintiffs allege occurred. Moreover, this is one of Plaintiffs' claims of error and violation, i.e., that the Defendant Officers gave Decedent an order and then shot and killed him when he complied with that order.

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

5

smoking a cigarette on the porch just outside the dining room area. As Decedent Jose Ceja crossed the threshold from outside into the dining room through a sliding glass door, his mother, Plaintiff Guadalupe Villa-Vargas, clearly heard one of the officers cry out to his fellow officer(s), "wait, wait, wait." The overzealous Officer Hatzell did not heed the warning of the more senior officer and opened fire on Decedent Jose Ceja, who was not posing an immediate threat to anyone.

The officer(s) did not give Decedent Jose Ceja any commands or directions prior to opening fire on him, other than asking him to come into the house. Decedent Jose Ceja stumbled toward the kitchen after being struck in the chest, where his dying body fell right by his father, Plaintiff Arturo Ceja-Gonzalez. Decedent Jose Ceja died at the scene, from two closely placed bullet wounds in his chest.

Sometime after the shooting, Plaintiff Pablo Ceja heard one of the defendant officers state something about Decedent Jose Ceja having a knife. Plaintiff Pablo Ceja and Plaintiff Guadalupe Villa-Vargas did not see Decedent Jose Ceja with anything in his hands when he came into the house. Plaintiff Arturo Ceja-Gonzalez was uncertain if Decedent Jose Ceja had anything in his hand and after hearing the police claim there was a knife, he speculated that Decedent Jose Ceja might have been holding a butter knife from the barbeque. All of the eye-witnesses clearly saw that Decedent Jose Ceja was doing nothing more than walking back into the house, at the officers' explicit request, at the time that he was gunned down.

Plaintiff Guadalupe Villa-Vargas, the Decedent's mother, and Plaintiff Pablo Ceja, the Decedent's brother, witnessed the incident, while standing near the defendant officers. Plaintiff Arturo Ceja-Gonzalez, Decedent Jose Ceja's father, witnessed the shooting from the kitchen. Plaintiff Leticia Ceja, the Decedent's sister-in-law; minor Plaintiff W.C., the Decedent's nephew; and minor Plaintiff J.C., the Decedent's niece, were also present in the home and heard the gunfire which resulted in Decedent Jose Ceja's untimely death. Plaintiffs Leticia Ceja, W.C. and J.C. lived with Decedent and enjoyed a close relationship with him. Decedent Jose Ceja left behind two minor children, Plaintiff A.C. and Plaintiff I.C.

After the shooting, Plaintiff Pablo Ceja heard a City of Fairfield Police Officer identify the shooting officer as the "rookie."

Plaintiffs' Opposition to Defendants' Motion to Dismiss  
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

6

**ARGUMENT**

**A. LEGAL STANDARD OF MOTION TO DISMISS**

A motion to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Id*. (internal quotations omitted).

A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of the complaint. There is a strong presumption against dismissing an action for failure to state a claim. See *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The Rule 12(b)(6) issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (internal quotation marks omitted). Defendants impugn Plaintiffs and are seeking dismissal for them, at this pre-discovery stage of

the litigation, not having information they have no way of having yet[2]—this is not a proper basis for dismissal.

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted). When considering whether plaintiff has stated a claim upon which relief can be granted, this Court accepts as true all allegations of material fact in the complaint and construes them in the light most favorable to plaintiff. See, *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).

**B. THE FAC ADEQUATELY STATES THAT DEFENDANTS GRIEGO AND MORGAN INTEGRALLY PARTICIPATED IN THE VIOLATIONS SUFFERED BY DECEDENT AND PLAINTIFFS**

Defendants assert that the FAC fails to state Section 1983 Claims against Defendants Griego or Morgan. Defendants are mistaken.

*1. Fourth Amendment Violation*

To state a claim under Section 1983, a plaintiff must allege that "(1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). Claims of excessive force "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether a particular seizure is reasonable must be "judged from the perspective of a reasonable officer on the scene," *id.* at 396, and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate

---

[2] For example, Defendants impugn Plaintiffs for not knowing which Defendant Officer verbally summoned Decedent Jose Ceja to come into the home from the patio, when they themselves are the sole holders of this information (as they revealed that Defendant Morgan made the oral entreaty to Decedent in the Joint Status Report (Document 14 at 3:6-8).) Similarly, based on the statements of other on-scene Fairfield police officers describing the shooter as the "rookie," Plaintiffs assumed Defendant Morgan was the shooting officer; however, only Defendants knew that Defendant Hatzell was the actual shooting officer. Much of the information, Defendants urge this Court to require of Plaintiffs simply cannot be known by Plaintiffs at this stage of the litigation. To require such would be a gross perversion of the *Iqbal* standard.

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

8

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *id*. an individual's "liability under section 1983 is predicated on his 'integral participation' in the alleged violation." *Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n. 12 (9th Cir.2007) (citing *Chuman v. Wright,* 76 F.3d 292, 294–95 (2004)). "'[I]ntegral participation' does not require that each officer's actions *themselves* rise to the level of a constitutional violation." *Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir. 2004) (emphasis added). "But it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id.*

Defendants appear to assert that because Defendants Griego and Morgan were not the shooting officers, they had no fundamental involvement in the constitutional violations suffered by Decedent Ceja and Plaintiffs. Not so. All three Defendant Officers gathered information from Plaintiff Pablo Ceja prior to contacting Decedent and learned that he was extremely intoxicated and possibly suicidal. Upon entering the Ceja home, all three Defendants observed that the home was full of family members, including, a pregant woman, children, Decedent's elderly parents, and other innocents. Indeed, the Defendant Officers were flanked on all sides by Decedent's family members. Despite being faced with these precarious and potentially dangerous circumstances, all three Defendant Officers failed to plan out how to engage with Decedent, and they failed to coordinate their approach to Decedent outside the presence of the family members. Moreover, the Defendant Officers, having been informed that Decedent was extremely intoxicated and potentially suicidal, failed to approach him appropriately and instead exacerbated the volatile situation by: using their coercive collective pressence and appearance; yelling commands, brandishing their weapons, and failing to warn that they would use deadly force. Importantly, all three Defendant Officers integrally participated in the shooting itself, by either pulling the trigger, calling Decedent into the home, or shooting him when he obeyed the order to enter the home. The fact that one of the officers said "wait, wait, wait" to his fellow officer indicates that the shooting was not only undue and unreasonable, but also highlights that the non-shooting officers' failed to prevent the unreasonable shooting, particularly in light of the perilous circumstances with so many innocents in the line of fire.

The Ninth Circuit has found that officers who did not themselves commit the act of force nevertheless integrally participated in the violation. (See *Boyd,* 374 F.3d at 780) (holding that every

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

9

officer who provided armed backup for another officer who unconstitutionally deployed a flash-bang device to gain entry to a suspect's home could be held liable for that use of excessive force because "every officer participated in some meaningful way" in the arrest and "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flashbang was to be deployed")). Indeed, courts most commonly determine that officers have not integrally participated in the constituional violation when they are not on scene during the event. *Cf. Torres v. City of Los Angeles,* 548 F.3d 1197 (9th Cir. 2008) (finding that detective who conducted investigation and provided information to arresting officers was not an integral participant in the unlawful arrest because she was not present when the arrest was made); *Bravo v. City of Santa Maria,* 665 F.3d 1076, 1090 (9th Cir. 2011) (concluding that officers who conducted a background investigation, but were not present during SWAT unit's unlawful residential search, were not integral participants); *Cunningham v. Gates,* 229 F.3d 1271, 1290 (9th Cir. 2000) (finding that non-present officers could not be held liable for failing to intercede to prevent their fellow officers from shooting the plaintiff); *Monteilh v. County of Los Angeles,* 820 F.Supp.2d 1081, 1090 (C.D.Cal. 2011) (confirming that officers must "provide some affirmative physical support at the scene of the alleged violation ..." in order to be considered integral participants).

As such, Defendants' argument that the FAC fails to state a Fourth Amendment claim against Defendants Griego and Morgan must fail.

Most of Defendants' other arguments are predicated on this same premise that the FAC fails to state facts that support a violation on the part of Defendants Morgan and Griego or that the facts stated do not amount to a violation and are premised on their misstatement of integral participation law. For the same reasons stated above, Defendants' arguments similarly fail as discussed infra.

### *2. Defendants Griego and Morgan are not Entitled to Qualified Immunity*

Even if a plaintiff plausibly alleges the deprivation of a constitutional right under color of state law, government officials are protected from liability for civil damages by the doctrine of qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

Here, Plaintiffs allege that Decedent Jose Ceja did not have a knife or weapon of any kind and did not make any threatening gesture toward the Defendant Officers, when they shot and killed him. It has been long held and was clearly established that the use of deadly force was reasonable only if an officer "'has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Long v. City and Cnty of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007); *Tennessee v. Garner*, 471 U.S. at 3 (1985)). As discussed above, the Ninth Circuit has long held that officers who integrally particpated in a constitutional violation are also liable for the harm caused therein, so all Defendant Officers' violations were clearly established at the time of the incident. Boyd, 372 F.3d at 780.

## C. PLAINTIFFS ADEQUATELY ALLEGE FOURTEENTH AMENDMENT VIOLATIONS[3]

Plaintiffs adequately assert Fourteenth Amendment substantive due process claims because they were deprived of their liberty interest in the companionship and society of Decedent Jose Ceja through official conduct. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (citation omitted). In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Id*. at 1137 (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998) (internal quotation marks omitted)). Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. *Id*. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Id*. at 1140.

Here, the Defendant Officers had ample time to coordinate their approach to Decedent Jose Ceja—an extremely intoxicated and potentially suicidal suspect—and failed to coordinate an approach

---

[3] Defendants argue that Plaintiffs' concealment claim must be dismissed. Plaintiffs agreed to amend the original complaint to name Defendant Hatzell as the shooting officer on the representation of Defendants. Plaintiffs maintain that it is odd that the on-scene officers suggested that the rookie officer (whom Plaintiffs understand to be Defendant Morgan: the most junior officer on scene) was responsible for the shooting. Plaintiffs will withdraw this aspect of their Fourteenth Amendment claim and the attendant claims for damages based on conspiracy at this time; however, if evidence of concealment surfaces during the course of discovery, Plaintiffs will seek to amend the complaint to re-allege this claim.

that was safe for themselves, the Ceja family and decedent. Additionally the Defendant Officers failed to approach decedent while factoring his impairment into their approach. The Defendant Officers' combined failures resulted in them shooting Decedent Ceja in his home, in front of his entire family, as the family members stood either adjacent to the shooting officers or to Decedent himself. Moreover, one of the Defendant Officers yelled for the shooting officer to wait, evincing that there was no need to shoot. That Plaintiffs were forced to watch the Defendant Police Officers—that they called for help—kill their loved one, when he was unarmed and made no threatening gesture toward them, shocks the conscience and clearly amounts to Fourteenth Amendment violation. Defendants' argument on this point must fail.

**D. PLAINTIFFS ADEQUATELY STATE A CLAIM FOR MONELL VIOLATIONS AGAINST DEFENDANT CITY**

Plaintiffs allege that Defendant City also committed Fourth Amendment violations pursuant to 42 U.S.C. Section 1983—*Monell* claims. A local governmental entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978). In order to establish liability for governmental entities under *Monell*, Plaintiff will be required to prove: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). In *Dougherty*, the Ninth Circuit affirmed a district court's dismissal of a *Monell* claim where the pleading "lack[ed] any factual allegations that would separate them from the formulaic recitation of a cause of action's elements deemed insufficient by [*Bell Atlantic v. Twombly, supra*, 550 U.S. 544 (2007)]." *Dougherty*, 654 F.3d at 200 (citing *Twombly*, 550 U.S. at 555); see also, *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Defendants argue that as alleged Plaintiffs' *Monell* claims fail because Plaintiffs' allegations of a widespread practice of unconstitutional conduct are wholly conclusory. Defendants are mistaken. The Ninth Circuit stated in *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), that when a

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

12

municipality "turn[s] a blind eye to severe violations of inmates' constitutional rights—despite having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." The Defendant Officers violated basic tenants and widespread practices of the law enforcement community by the haphazard manner in which they approached a severly diminished and potentially suicidal suspect, with such violations necessarily leading to Decedent Jose Ceja's death. Defendant City obviously ratified these violations and failures by failing to discipline these officers, which itself can be a violation on the part of the City. Moreover, if the Defendant Officers failures are a result of a lack of training or inadequate training on how to approach diminished suicidal suspects, then the failure of their training led to Decedent Ceja's death—which is also a *Monell* violation.

In addition, Defendants' argument that Plaintiffs showing regarding the subject incident is insufficient to establish municipal liability is incorrect, as the Ninth Circuit has found that a *Monell* violation can be established on a single act of misconduct. "A plaintiff [] might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997)).

Defendants' argument is otherwise premature. At this stage in the litigation, Plaintiffs have not even conducted meaningful discovery into the Defendants' past conduct and prior complaints of other instances of similar misconduct which would prove Defendant City's customs and policies. As such, Plaintiffs have provided Defendant City fair notice of their *Monell* claims, and this Court should deny Defendants' motion on this point. In the alternative, Plaintiff requests leave to amend the Complaint to address any deficiencies in pleading this cause of action.

**E. STATE LAW CAUSES OF ACTION**

*1. California Civil Code Section 52.1*

Defendants argue that the FAC fails to state facts showing violence or threat of violence by Defendants Griego and Morgan. However, Plaintiffs have aleady discussed how these defendants integrally particpated in the violence perpetrated on Decedent Jose Ceja and how the collective presence

of these defendants was coercive. Citing *Shoyoye v. Los Angeles*, 203 Cal.App.3d 947 (2012). Defendants argue that the Defendant Officers did not commit a violation of California Civil Code section 52.1, because the use of force was intrinsic to the alleged violation itself. Defendants are again mistaken.

The Bane Act (Cal. Civ. Code, § 52.1) authorizes a civil action "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 331 (1998). There is a split of authority on the issue of whether the Bane Act can be asserted to address a claim of excessive force where there is no other constitutional or statutory violation. Defendants urge too broad a reading of *Shoyoye*. The *Shoyoye* Court determined that 52.1 "was not intended to redress harms 'brought about by human error rather than intentional conduct." *Bass v. City of Fremont*, 2013 WL 891090, at *5 (ND Cal. 2013) (quoting *Shoyoye*, 203 Cal. App. 4th at 959, and noting that *Shoyoye* involved a plaintiff who was over-detained in the county jail due to an employee's unintentional and negligent handling of inmate paperwork). This Court should find as several other courts that have applied the Bane Act to a claim of excessive force alone. See e.g., *Cardoso v. Cnty. of San Mateo*, 2013 WL 900816 (N.D. Cal. 2013) (plaintiff claimed that after her arrest, and while she was in her jail cell, a deputy walked in, called her "stupid" and violently twisted her arm causing a fracture); *Rodriguez v. City of Modesto*, 2013 WL 6415620, at *10-13 (E.D. Cal. 2013) (plaintiff claimed intentional excessive force in connection with arrest under Cal. Penal Code § 148(a)).

*Shoyoye* simply does not prohibit application of the Bane Act in this circumstance. The *Shoyoye* court limited its denial of Bane Act relief to cases where the constitutional or statutory violation "occurs because of mere negligence rather than a volitional act intended to interfere with the exercise or enjoyment of a constitutional right." *Shoyoye*, 203 Cal. App. 4th at 957 (cited with approval in *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 979 (2013)).

Defendants' argument on this point must fail.

### 2. Plaintiffs' Negligence Claims

Plaintiffs bring a cause for Wrongful Death – Negligence on behalf of Decedent Jose Ceja and for Negligent Infliction of Emotional Distress on their own behalf as they were bystanders to the shooting

death of Decedent Jose Ceja. Defendants argue that the FAC does not state facts showing Defendants Griego or Morgan's liability because they did not use any force. Again, Defendants are mistaken.

Plaintiffs assert direct liability against the Defendant Officers and against Defendant City under a theory of respondeat superior for all of the alleged torts. See Cal.Civ.Proc. Code § 377.60 (providing the statutorily-created right of an heir to recover damages resulting from a tortious act which results in the decedent's death; *Gilmore v. Superior Court,* 230 Cal.App.3d 416, 420 (1991).

*Wrongful Death[4]*

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Center,* 140 Cal.App.4th 1256, 1264 (2006). The California Supreme Court has held that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin,* 24 Cal.3d 629, 634 (1979) (citing *Grudt v. City of Los Angeles,* 2 Cal.3d 575, 587 (1970)). In this context, to prove the tort, a plaintiff must show that the officer violated his "duty to use reasonable force under the totality of the circumstances." *See Brown v. Ransweiler,* 171 Cal.App.4th 516, 526, fn.10 (2009). Importantly, the California Supreme Court recently reaffirmed long-standing precedent that where an officer's preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, negligence "liability can arise if the tactical conduct and decisions leading up to the use of deadly force *show*, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty of San Diego* (*Hayes*), 57 Cal.4th 622, 632 (2013) (emphasis original). The *Hayes* Court expressly distinguished California's wrongful death – negligence standard – from that of the rule that applies to violations of the federal Constitution's Fourth Amendment, which focuses "more narrowly than state tort law on the moment when deadly force is used, placing less emphasis on preshooting conduct." *Hayes, supra*, 57 Cal.4th at 638 (internal citations omitted). "The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability." *Id*. citing, *Billington v. Smith,* 292 F.3d 1177, 1190 (9th Cir. 2002).

---

[4] Plaintiffs recognize the sixth cause of action for Negligence is duplicative of Plaintiffs' Wrongful Death-Negligence claim and thereby withdraw it.

Plaintiffs' Opposition to Defendants' Motion to Dismiss
*Ceja v. City of Fairfield, et. al.,* USDC Eastern Dist. Case No. 2:16-cv-00746 JAM-CKD

15

1    Here, the Defendant Officers did not coordinate their approach to contact Decedent Jose Ceja, despite knowing that he was extremely intoxicated and potentially suicidal. The Defendant Officers also did not factor Decedent's dimished state into their approach to him. They contacted Decedent within the confines of a small home, while surrounded by children, elderly parents, a pregnant woman and other innocents, and opened fire while standing elbow to elbow with these people. Defendants then shot Decedent Jose Ceja after he obeyed their order to enter the home, while he was unarmed and did not make any threatening gestures toward them. Based on the totality of the circumstances, the Defendant Officers violated their duty of care owed to Decedent Jose Ceja.

*Negligent Infliction of Emotional Distress*

The elements of a cause of action for the negligent infliction of emotional distress based on the bystander theory are: (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress-a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances. *Thing v. La Chusa*, 48 Cal.3d 644, 667-668 (1989); see also *Ra v. Superior Court*, 154 Cal.App.4th 142, 148-49 (2007) (bystanders must be closely related to the victim, have been present at the scene and contemporaneously aware of the injuring, and have suffered serious emotional distress). Here, the bystander Plaintiffs are all closely related to Decedent Jose Ceja and either visibly watched him be gunned down by the Defendant Officers or were separated from the shooting by a wall and were contemporaneously aware of the shooting. *Bird v. Saenz*, 28 Cal.4th 910, 916 (2002) (holding "*Thing's* requirement that the plaintiff be contemporaneously aware of the injury-producing event has not been interpreted as requiring visual perception of an impact on the victim. A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative.")

Defendants' attack on Plaintiffs' negligence based claims must fail.

### *3. Assault and Battery*

Again, Defendants argue that Defendants Griego and Morgan are not exposed to assault and battery liability. "The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the

contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526–527 (2009). Because a police officer is "charged with acting affirmatively and using force as part of their duties," a plaintiff suing on grounds of battery resulting from police action must prove that "the police officer's use of force was unreasonable." *Id*. at 527. As battery is the state law counterpart to Section 1983 liability, Defendants' argument fails as to these Defendant Officers for the same reasons stated above.

**CONCLUSION**

Given the foregoing, Defendants' Motion to Dismiss must be denied outright. In the alternative, Plaintiffs seek leave of the Court to amend the Complaint to include any inadvertently omitted references, to correct any inartful verbiage, and otherwise remedy any other pleading deficiencies this Court ascribes.

Dated: July 26, 2016　　　　　　　　　　　　LAW OFFICES OF JOHN L. BURRIS

By: */s/ Benjamin Nisenbaum*
　　　Benjamin Nisenbaum
　　　Attorney for Plaintiffs